**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **GATEWAY CUSTOMER SOLUTIONS, LLC, a Nebraska Limited Liability Company,** | **8:14CV353** |
| **Plaintiff,** | |
| **vs.** | **ORDER** |
| **GC SERVICES LIMITED PARTNERSHIP, a Delaware Limited Partnership,** | |
| **Defendant.** | |

This matter is before the court on plaintiff's, Gateway Customer Solutions, LLC (Gateway), Motion for Summary Judgment (Filing No. 26), and defendant's, GC Services Limited Partnership (GC Services), Counter-Motion for Summary Judgment (Filing No. 38).[1]  Gateway filed a brief (Filing No. 28) and indices of evidence (Filing Nos. 27 and 29) in support of the motion.  GC Services filed a response (Filing No. 34), brief (Filing No. 37),[2] and indices of evidence (Filing Nos. 35 and 36) in support of its counter-motion and in opposition to Gateway's summary judgment motion.  Gateway filed a brief (Filing No. 40) in reply.  Thereafter, GC Services filed a brief (Filing No. 44) and index of evidence (Filing No. 45) in reply.

GC Services also filed a Motion to Proceed Without a Resident Attorney (Filing No. 47).  Gateway filed a brief (Filing No. 48) and index of evidence (Filing No. 49) in opposition to the motion.

**INTRODUCTION**

This case arises from the parties' dispute whether GC Services is obligated to remit commission payments to Gateway.  Gateway asks the court to declare GC Services renewed an agreement with Mercedes-Benz Financial Services (MBFS), which would entitle Gateway, who brokered GC Services' initial relationship with MBFS, to continued

---

[1]  The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  **See** Filing No. 13 - Rule 26(f) Report ¶ H.
[2]  GC Services filed an identical brief (Filing No. 39) in support of its summary judgment motion.  The court will refer to GC Services' response brief (Filing No. 37) when addressing GC Services' arguments.

commission payments.  GC Services denies Gateway is entitled to judgment or any other relief requested.  GC Services argues it did not renew its agreement with MBFS but instead entered into a new agreement with MBFS, thus ceasing GC Services' obligation to remit commission payments.

## UNCONTROVERTED FACTS

The following facts are those stated in the parties' briefs which have been admitted or not properly resisted and those facts as supported by the record.  **See** NECivR 56.1(b)(1); Fed. R. Civ. P. 56(c)(1)(A) and (e)(2).

1.      Gateway is a Nebraska limited liability company located in Omaha, Nebraska.  **See** Filing No. 35-1 - Business Referral Agreement.  Gateway is engaged in the business of brokering business relationships.  *Id.*

2.      GC Services is a Delaware limited liability partnership having its principal place of business in Houston, Texas.  *Id.*  GC Services provides collection services.  *Id.*; **see also** Filing Nos. 36-1 and 36-3 - MBFS Agreements.

3.      On April 29, 2011, Gateway and GC Services entered into a Business Referral Agreement.  **See** Filing No. 35-1 - Business Referral Agreement.

4.      The Business Referral Agreement provided Gateway would solicit and refer opportunities for collection services, customer care or similar customer contact management services, and, if applicable, back-office services to GC Services.  *Id.* ¶ 1.

5.      The Business Referral Agreement established GC Services would remit commission payments to Gateway.  *Id.* ¶ 4.  Specifically,

> [GC Services] will make commission payments to [Gateway] calculated based on the [fees] actually received by [GC Services] for the period of time as specified in the applicable Addendum related to the services delivered by [GC Services] to the Potential Client, which are referred by [Gateway] and explicitly specified on an executed Addendum (or any amended Addendum).

*Id.*

6.      The Term/Termination Clause in the Business Referral Agreement provided:

> This [Business Referral] Agreement shall be effective for one (1) year from its effective date and may be renewed for

additional annual periods upon the written agreement of each party.  This [Business Referral] Agreement may be terminated by [GC Services] upon thirty (30) days written notice for convenience.  Notwithstanding the foregoing, [Gateway] shall receive commissions for the time period specified in any executed Addendum.  Either party may terminate this [Business Referral] Agreement, any Addendum individually, or all Addendums for cause for breach by the other party of any material provision of this Agreement, provided that written notice of such alleged breach has been given to the breaching party, and such breach has not been cured within fifteen (15) days, if such breach is capable of being cured, after receipt of the notice. If this [Business Referral] Agreement or any or all Addendum(s) is terminated by [GC Services] for breach by [Gateway], such termination shall include any commission payment obligations for commissions otherwise due on and after the date of the breach.

*Id.* ¶ 12.

7.     On May 20, 2011, Gateway and GC Services entered into Addendum A to the Business Referral Agreement (the 2011 Addendum).  **See** Filing No. 35-4 - 2011 Addendum.

8.     The 2011 Addendum established MBFS might contract for GC Services' customer call center services, Gateway would receive from GC Services a brokerage fee of five percent (5%) of the fees GC Services received from MBFS, if certain conditions were met, and, under the "Terms of Fee Payment," Gateway would receive the brokerage fee for "[t]he duration of an awarded contract and any renewals pursuant thereto." *Id.*

9.     On August 1, 2011, GC Services and MBFS entered into an agreement (the 2011 MBFS Agreement).  **See** Filing No. 36-1 - 2011 MBFS Agreement.

10.     The 2011 MBFS Agreement provided:

[The 2011 Agreement] is for a period of three (3) years ("Initial Term") and shall continue upon the same terms and conditions as set forth herein for additional successive one-year periods ("Renewal Terms") until termination of same is requested by written notice from either party to the other at least ninety (90) days in advance of the termination of any Initial or Renewal Term period, as applicable.

*Id.*

11.     On January 11, 2012, Gateway and GC Services executed an amendment to the 2011 Addendum.  **See** Filing No. 27-1 Ex. C - Addendum.[3]   Both parties signed the Addendum.  ***Id.***

12.     The Addendum amended the brokerage fee to four percent (4%), but maintained the "Terms of Fee Payment" as "[t]he duration of an awarded contract and any renewals pursuant thereto."  ***Id.***

13.     While the term of the Business Referral Agreement, according to its language, expired April 29, 2012, and no party agreed, in writing, to extend the term, GC Services continued remitting commission payments to Gateway.  **See** Filing No. 35-1 - Business Referral Agreement; Filing No. 35-3 - Michael Jones (Jones) Aff. ¶ 3.

14.     On January 29, 2013, GC Services emailed Gateway with a notice of termination.  **See** Filing No. 35-5 - Jan. 29, 2013, Email.  The email attached "termination notices for each of the Business Referral Agreement, Professional Services Agreement and the SOW No. 1 to the Professional Services Agreement each effective February 28, 2013."  ***Id.***[4]

15.     The Notice of Termination for the Business Referral Agreement provides:

> Pursuant to the Section 12, "Term/Termination," of the Business Referral Agreement between Gateway Customer Solutions, LLC and GC Services Limited Partnership Dated April 29, 2011 ("Agreement"), the Agreement may be terminated by Agency upon thirty (30) days written notice for convenience.  Please accept this letter as formal notice that GC Services is terminating the Agreement for convenience effective February 28, 2013.

**See** Filing No. 35-2 - Notice of Termination.

16.     On January 31, 2013, Gateway "acknowledge[d] receipt of the termination notice for SOW 1 of our Professional Services Agreement dated March 23, 2012, effective Feb 28, 2013."  **See** Filing No. 35-5 - Jan. 31, 2013, Email.[5]

---

[3]   Although there are two addendums in this case, the amended addendum is the operative addendum, which the court will simply refer to as the Addendum.

[4]   The court notes the only termination notice provided to this court for review, and apparently relevant, is the notice referencing the Business Referral Agreement and found in Filing No. 35-2.

[5]   Gateway's email does not acknowledge receipt of the Notice of Termination for the Business Referral Agreement, but Gateway does not dispute the Business Referral Agreement was terminated.  **See** Filing No. 40 - Gateway's Reply p. 4

17.    Close to the end of the 2011 MBFS Agreement, while GC Services and MBFS discussed whether to renew or extend the 2011 MBFS Agreement or enter into a new agreement, GC Services and MBFS entered into two short extensions of the 2011 MBFS Agreement.  **See** Filing No. 35-3 - Jones Aff. ¶ 5.

18.    On August 1, 2014, GC Services and MBFS executed a new agreement (the 2014 MBFS Agreement).  **See** Filing No. 36-3 - 2014 MBFS Agreement.

19.    The 2014 MBFS Agreement recites it "supersedes and replaces" the 2011 MBFS Agreement.  ***Id.***

20.    The 2014 MBFS Agreement also provides:  "This [2014 MBFS] Agreement is for a period of three (3) years ('Initial Term') beginning on the Effective Date, and may be extended as mutually agreed to by the parties."  ***Id.***[6]

21.    On September 22, 2014, GC Services sent a letter to Gateway concerning the expiration of the 2011 MBFS Agreement.  **See** Filing No. 35-6 - Sept. 22, 2014, Letter. The letter provides:

> Pursuant to the *Terms of Fee Payment* section of Addendum A, as amended, to the Business Referral Agreement Between Gateway . . . and GC Services . . . dated April 29, 2011, which was terminated effective February 28, 2013, the duration of the fee payments extended through an awarded contract with MBFS and any renewals thereof.  The [2011 MBFS Agreement] has not been renewed beyond September 30, 2014. Accordingly, there shall be no additional fee payments subsequent to the fee payment for September 2014.

***Id.***

22.    On September 29, 2014, Gateway responded to GC Services stating "[i]t is our understanding that the outsource relationship with MBFS has been renewed and that GC Services will continue to operate the program on behalf of MBFS beyond Sept[ember] 30, 2014.  As such, that would meet the requirement of 'any renewals pursuant thereto' under Addendum A."  **See** Filing No. 35-7 - Sept. 29, 2014, Email.

23.    On September 29, 2014, GC Services replied:

---

[6]  GC Services attached two versions of the 2014 MBFS Agreement.  **See** Filing Nos. 36-2 - Ex. G and 36-3 - Ex. K.  One of the attachments, Ex. G, is not signed by both GC Services and MBFS.  The other attachment, Ex. K, is signed by both parties.  At one point, GC Services quotes language from the 2014 MBFS Agreement, but cites to Ex. G, although the quote is from Ex. K.  **See** Filing No. 37 - Response p. 19.  In a footnote, GC Services notes a prior draft had different language, which is consistent with Ex. G.  ***Id.***  The court will cite to Ex. K (Filing No. 36-3) as the operative 2014 MBFS Agreement.

> You are correct that we currently continue to perform services
> for MBFS, however we have negotiated a new agreement at
> the expiration of the original agreement and our services will no
> longer be performed pursuant to that contract or pursuant to
> any renewal options pursuant to that contract.  Accordingly our
> payment obligations under Addendum A will cease as of
> September 30, 2014.

**See** Filing No. 27-1 Ex. F - Sept. 29, 2014, Email.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013) (**citing** Fed. R. Civ. P. 56(c)).  "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (**quoting** *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*)) (internal quotations omitted).  In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325.  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (**quoting** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that

6

there is a genuine issue for trial." **Briscoe**, 690 F.3d at 1011 (**quoting *Torgerson***, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. ***Quinn v. St. Louis Cty.***, 653 F.3d 745, 751 (8th Cir. 2011) (**quoting *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 247-48 (1986)). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. ***Anderson***, 477 U.S. at 248. A dispute over a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Id.***

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." ***Guimaraes v. SuperValu, Inc.***, 674 F.3d 962, 972 (8th Cir. 2012) (**quoting *Torgerson***, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. ***Torgerson***, 643 F.3d at 1042 (**quoting *Ricci v. DeStefano***, 557 U.S. 557, 586 (2009)) (internal quotations omitted).


## CHOICE OF LAW

The Business Referral Agreement provides "[t]his Agreement shall be construed and interpreted in all respects under the laws of the State of Delaware without regard to any conflicts of law provisions." **See** Filing No. 35-1 - Business Referral Agreement ¶ 23. Consistent with the express language of the Business Referral Agreement, the parties agree Delaware law applies to this action. **See** Filing No. 28 - Brief; Filing No. 37 - Response.


## ANALYSIS

The principle dispute here is whether GC Services' 2014 MBFS Agreement renews the 2011 MBFS Agreement. If the 2014 MBFS Agreement renews the 2011 MBFS Agreement, GC Services owes Gateway commission payments under the Addendum, if enforceable. If the 2014 MBFS Agreement supersedes and replaces the 2011 MBFS Agreement, GC Services does not owe Gateway commission payments.

Delaware "has adopted traditional principles of contract interpretation." ***ConAgra Foods, Inc. v. Lexington Ins. Co.***, 21 A.3d 62, 68 (Del. 2011). "One [traditional] principle [of contract interpretation] is to give effect to the plain meaning of a contract's terms and provisions when the contract is clear and unambiguous." ***Id.*** at 68-69. Whether a contract or contractual term is ambiguous is a question of law for the court to decide. **See *O'Brien v. Progressive N. Ins. Co.***, 785 A.2d 281, 286 (Del. 2001); **see also *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.***, 616 A.2d 1192, 1195 (Del. 1992); ***Citadel Holding Corp. v. Roven***, 603 A.2d 818, 822 (Del. 1992) ("The determination of ambiguity lies within the sole province of the court."). "Where . . . the plain language of a contract is unambiguous i.e., fairly or reasonably susceptible to only one interpretation, [courts] construe the contract in accordance with that plain meaning and will not resort to extrinsic evidence to determine the parties' intentions." ***BLGH Holdings LLC v. enXco LFG Holding, LLC***, 41 A.3d 410, 414 (Del. 2012). "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous." ***Roven***, 603 A.2d at 822; **see also *Rhone-Poulenc***, 616 A.2d at 1196. "[C]reating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." ***Lorillard Tobacco Co. v. Am. Legacy Found.***, 903 A.2d 728, 739 (Del. 2006) (citation omitted).

When a court "may reasonably ascribe multiple and different interpretations to a contract, [the court] will find that the contract is ambiguous." ***Osborn ex rel. Osborn v. Kemp***, 991 A.2d 1153, 1160 (Del. 2010). "If a contract is ambiguous, [courts] will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party." ***Roven***, 603 A.2d at 822. In cases involving questions of contract interpretation,

> Summary judgment may still be appropriate, however, if the moving party's record is not *prima facie* rebutted so as to create material issues of fact. . . . [A] court will grant summary judgment under either of two scenarios: when the contract in question is unambiguous, or when the extrinsic evidence in the record fails to create a triable issue of material fact and judgment as a matter of law is appropriate.

***Buyse v. Colonial Sec. Serv., Inc.***, No. CIV.A. N10C-08012JRS, 2012 WL 3025843, at *2 (Del. Super. July 19, 2012) (internal quotation marks and citations omitted).

8

Generally, Gateway argues this court should not permit GC Services to reap the benefits of its bargain without paying Gateway.   **See** Filing No. 28 - Gateway Brief. Gateway contends GC Services' payment obligations continue under the Business Referral Agreement because GC Services renewed or extended the 2011 MBFS Agreement.   ***Id.*** 8-14.[7]   Gateway argues GC Services did not negotiate a new contract with MBFS but merely copied, with some exceptions, the 2011 MBFS Agreement into the 2014 MBFS Agreement.   ***Id.***; **compare** Filing No. 36-1 - 2011 MBFS Agreement **with** Filing No. 36-3 - 2014 MBFS Agreement (including the same misspelling of "responsibility" in Article XXII).   Therefore, Gateway argues GC Services remains obligated to pay Gateway commission payments.   ***Id.***

In response, and in support of GC Services' own summary judgment motion, GC Services asserts Gateway should not be paid for doing absolutely nothing in connection with negotiating the 2014 MBFS Agreement.   **See** Filing No. 37 - Response.  GC Services argues the Business Referral Agreement does not entitle Gateway to commission payments because, although the Business Renewal Agreement terminated based on its own written term of one year, on April 29, 2012, GC Services terminated the Business Renewal Agreement on February 28, 2013, which Gateway acknowledged.   ***Id.*** at 11-16; **see also** Filing No. 35-2 - Notice of Termination; Filing No. 35-5 - Acknowledgment. Additionally, GC Services argues the 2014 MBFS Agreement did not renew or extend the 2011 MBFS Agreement but is a new contract that supersedes and replaces the 2011 MBFS Agreement.   ***Id.*** at 17-21.  GC Services contends if it wanted to renew or extend the 2011 MBFS Agreement with MBFS, which it did twice with two short extensions, the parties would have executed such an extension.   ***Id.*** (**citing** Filing No. 35-3 - Jones Aff. ¶ 5 (explaining two short extensions were executed)).   Assuming the court looks beyond the 2014 MBFS Agreement's terms it "supersedes and replaces" the 2011 MBFS Agreement, GC Services contends the court cannot grant summary judgment for Gateway because any question MBFS and GC Services intended anything other than what was stated in the 2014 MBFS Agreement is a question of fact for the jury to decide.   ***Id.***

In reply, Gateway reasserts no reasonable jury could find the 2014 MBFS Agreement was not a renewal of the 2011 MBFS agreement.   **See** Filing No. 40 -

---

[7]  The court's citation to the parties' briefs coincides with the CM/ECF pagination.

Gateway's Reply.  Gateway contends the Addendum entitles it to continued commission payments.  *Id.* at 4-7.  Gateway clarifies the "only scenario whereby 'termination shall include any commission payment' was if GC Services terminated the [Business Referral Agreement] for breach by Gateway."  *Id.* at 5.  Gateway contends there is no allegation of a breach and the "Terms of Fee Payment" in the Addendum, which provides for continued payment of the commission, is clear and unambiguous.  *Id.* at 5-6.  Gateway asserts the intent of MBFS and GC Services in executing the 2014 MBFS Agreement is irrelevant because GC Services is obligated to pay the commission for any renewal of the 2011 MBFS Agreement and the 2014 MBFS Agreement qualifies as a renewal.  *Id.* at 7.

In a final reply, GC Services argues the undisputed record shows the 2014 MBFS Agreement was not an extension or renewal of the 2011 MBFS Agreement, but was instead a wholly new agreement.  **See** Filing No. 44 - GC Services' Reply.  GC Services asserts the Addendum, which does not constitute a contract under Delaware law due to its silence as to termination, does not afford Gateway its sought-after commission.  *Id.* at 3.  Regardless, GC Services contends the Addendum was terminated and should not be allowed to exist in perpetuity.  *Id.* at 9-11.  Lastly, GC Services argues if any ambiguities exist in the Addendum, such ambiguities must be construed against the drafter, Gateway. *Id.* at 8-9.

The parties agree the Business Referral Agreement was terminated February 28, 2013.  **See** Filing No. 35-2 - Notice of Termination; Filing No. 35-5 - Acknowledgment; Filing No. 40 - Gateway's Reply p. 4; Filings Nos. 37 and 44 - Gateway's Briefs.  Therefore, the Business Referral Agreement is not the basis for Gateway's relief, as originally argued in Gateway's opening brief.  Instead, Gateway contends the Addendum provides for its relief.  Therefore, two issues remain:  A) Does the Addendum remain enforceable? and B) If the Addendum is enforceable, was the 2014 MBFS Agreement a renewal of the 2011 MBFS Agreement within the scope of the Addendum?

**A.     The Addendum**

The undisputed evidence shows "***[n]otwithstanding*** the [termination of the Business Referral Agreement], [Gateway] shall receive commissions for the time period specified in any executed Addendum."  **See** Filing No. 35-1 - Business Referral Agreement

¶ 12 (emphasis added).  The parties specifically contracted for the Addendum to survive the termination of the Business Referral Agreement, unless a party breached the agreement.  In fact, GC Services' conduct shows it understood the Addendum survived the Business Referral Agreement's termination as GC Services continued to remit commission payments following the agreement's termination.  **See** Filing No. 35-3 - Jones Aff. ¶ 3. Additionally, there is no evidence a breach precipitated termination of the Business Referral Agreement or the Addendum and the parties have not argued a breach occurred. Therefore, termination of the Business Referral Agreement did not terminate the Addendum's enforceability.

Furthermore, GC Services' September 29, 2014, email to Gateway did not terminate the Addendum's enforceability.  Although GC Services stated its obligations under the Addendum ceased as of September 30, 2014, neither the Business Referral Agreement nor the Addendum allow for termination in such a manner.  Instead, the Addendum's enforceability ends when the underlying contract, which in this case is the 2011 MBFS Agreement, is terminated or not renewed.  Thus, GC Services' argument the Addendum cannot remain valid and enforceable because it lacks a termination clause is unconvincing.  GC Services' obligation to pay a brokerage fee under the Addendum does not exist in perpetuity but its time of performance is fixed to the life of the underlying contract and will cease at the conclusion "of an awarded contract and any renewals pursuant thereto."  **See** Filing No. 27-1 - Addendum.  Accordingly, there is no genuine issue of material fact the Addendum's validity extended beyond the Business Referral Agreement's termination.

**B.    Renewal**

The remaining issue the court must resolve is whether the 2014 MBFS Agreement renewed the 2011 MBFS Agreement.  As an initial matter, the court notes the parties argued at length about the ambiguity, or lack thereof, of the term "renewal"; however, the parties did not posit a definition of the term.  The only attempt, other than contesting the meaning and scope of renewal, to define the term was in Gateway's opening brief wherein it argues renewal includes "extensions."  **See** Filing No. 28 - Gateway's Brief p. 3. Regardless, in construing the ordinary and plain meaning of a disputed term, the Supreme

11

Court of Delaware has used standard, nonlegal dictionaries as a guide.  **See, e.g.**, ***Lorillard Tobacco***, 903 A.2d at 741-42 ("When a term's definition is not altered or has no 'gloss' in the [relevant] industry it should be construed in accordance with its ordinary dictionary meaning.") (internal quotation marks and citation omitted) (alteration in original).[8] The court notes the Supreme Court of Delaware has used an online dictionary to define terms.  **See, e.g.**, ***Villabona v. Delaware Real Estate Comm'n***, 12 A.3d 1155 (Del. 2011) (using the online Merriam-Webster Dictionary to define a term in a statute).

The court finds the term renewal is unambiguous and therefore the plain and ordinary meaning of the term guides this court's determination.  The term renewal, even as modified by "any," is fairly and reasonably susceptible to only one interpretation.  **See *O'Brien***, 785 A.2d at 288 ("[A] contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more different meanings.").  According to two standard, nonlegal dictionaries, renewal means "the act of extending the period of time when something is effective or valid, the act of renewing something, the state of being made new, fresh, or strong again, the state of being renewed."  Merriam-Webster Online Dictionary, 2015, http://www.merriam-webster.com/dictionary/renewal (24 Mar. 2015); **see also** Oxford English Dictionary Online, 2015, http://www.oed.com/view/Entry/162428?redirectedFrom=renewal#eid (24 Mar. 2015) (defining renewal as "[t]he action of renewing or re-establishing something, or the state of being renewed; spec. (a) the action of extending the period of validity of a lease, licence, etc.; (b) the action of resuming an activity after an interruption").

In accordance with the above definition, the fairly and reasonably susceptible interpretation of renewal is:  extending the period of time something is effective or to make new again.  The court will not ascribe a different meaning to the term renewal solely because the parties do not agree on the interpretation or scope of the term.  **See *Lorillard Tobacco***, 903 A.2d at 739; ***Rhone-Poulenc***, 616 A.2d at 1195-96.  Moreover, the court will not create an ambiguity where none exists and create a new contract with rights and liabilities not assented to by the parties.  **See *Lorillard Tobacco***, 903 A.2d at 739.

---

[8]  The Delaware Supreme Court referenced, for example, Webster's Third New International Dictionary of the English Language, The American Heritage Dictionary of the English Language, The New Oxford American Dictionary, and The Random House Dictionary of the English Language.  **See *Lorillard Tobacco***, 903 A.2d at 741-42.

Gateway had ample opportunity, in the Business Referral Agreement and Addendum, to draft a provision to provide for the continued payment of its commission for any new or renewed contract.[9]   Instead, the parties agreed to continue commission payments only if GC Services renewed the awarded contract with MBFS.

For Gateway to be entitled to continued commission payments, the 2014 MBFS Agreement must extend the period of time the 2011 MBFS Agreement is effective or make new again the 2011 MBFS Agreement.  The 2014 MBFS Agreement neither extended the effective date nor made new again the 2011 MBFS Agreement.  The 2014 MBFS Agreement specifically provides it "supersedes and replaces" the 2011 MBFS Agreement. **See** Filing No. 36-3 - 2014 MBFS Agreement.  Further, for example, the 2014 MBFS Agreement has a different option to extend the term of the agreement.  **Compare** Filing No. 36-1 - 2011 MBFS Agreement ¶ 1 **with** Filing No. 36-3 - 2014 MBFS Agreement ¶ 1. The uncontroverted evidence establishes the 2014 MBFS Agreement is not a renewal of the 2011 MBFS Agreement, but is a separate, new agreement.

Importantly, Gateway has not presented any evidence contrary to the evidence the 2014 MBFS Agreement is a new agreement that supersedes and replaces the 2011 MBFS Agreement.  Gateway's allegation MBFS and GC Services simply recited the parties were superseding and replacing the 2011 MBFS Agreement in order to avoid GC Services' obligation to pay a commission, is just that, an allegation unsupported by evidence. Although the agreements use identical language in numerous provisions, that alone is insufficient to contradict the language of the 2014 MBFS Agreement.  Gateway has offered inadequate support for its argument a new contract that copies provisions from a previous contract is merely a renewal or extension of the previous contract.

Although unnecessary, a review of the parol evidence supports the court's determination the 2014 MBFS Agreement is not a renewal of the 2011 MBFS Agreement. Mr. Jones, GC Services' Executive Vice President and Chief Financial Officer, stated the 2014 MBFS Agreement is new agreement.  **See** Filing No. 35-3 - Jones Aff. ¶ 5. Moreover, GC Services and MBFS' conduct indicates the parties entered into a new

---

[9]  Even if the court concludes renewal is ambiguous and Gateway's interpretation of the term is a reasonable one, applying the doctrine of *contra proferentem* and interpreting the Addendum against the drafter, Gateway, and in favor of GC Services, renewal is limited to the plain and ordinary meaning of the term, as defined above.  **See Kemp**, 991 A.2d at 1160 ("If a contract is ambiguous, we will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party.").

agreement and not a renewal of the 2011 MBFS Agreement.  GC Services and MBFS' two short extensions of the 2011 MBFS Agreement indicates the parties knew how to and were more than capable of renewing the 2011 MBFS Agreement had the parties wanted to renew the agreement for a longer period of time.  **See *id.***  Instead, GC Services and MBFS negotiated a new agreement, which included different terms, although some of the terms were copied from the 2011 MBFS Agreement.

As a result, the Addendum's use of the term renewal is unambiguous and there is no genuine issue of material fact the 2014 MBFS Agreement is not a renewal of the 2011 MBFS Agreement.  **See *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.***, 36 A.3d 776, 784 (Del. 2012) (stating summary judgment is appropriate in a dispute over the proper interpretation of a contract when the language is unambiguous); ***Anderson***, 477 U.S. at 248 (stating a dispute over a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party").  Consequently, because the court finds the 2014 MBFS Agreement is not a renewal of the 2011 MBFS Agreement, Gateway is not entitled to continued commission payments.  Upon consideration,

**IT IS ORDERED**:

1.    The plaintiff's Motion for Summary Judgment (Filing No. 26) is denied.

2.    The defendant's Counter-Motion for Summary Judgment (Filing No. 38) is granted.

3.    Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

4.    The defendant's Motion to Proceed Without a Resident Attorney (Filing No. 47) is denied as moot.

Dated this 25th day of March, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge